# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CITY OF ST. PETERSBURG, FLORIDA,

      Plaintiff,

v.                                 CASE NO: 8:10-cv-693-T-26TBM

WACHOVIA BANK, NATIONAL ASSOCIATION
d/b/a Wachovia Global Securities Lending;
WELLS FARGO & COMPANY; and
METROPOLITAN WEST SECURITIES, L.L.C.
d/b/a Wachovia Global Securities Lending,

      Defendants.

_____/

## O R D E R

Before the Court is Defendants Wachovia Bank, N.S. and Metropolitan West

Securities, L.L.C.'s[1] Motion to Dismiss Counts II through V of the Complaint (Dkt. 19),

and Plaintiff's Memorandum In Opposition.  (Dkt. 25).  After careful consideration of the

allegations of the Complaint (Dkt. 1), the Court concludes that the motion should be

granted as to Counts IV and V, and denied as to Counts II and III.

## ALLEGATIONS OF THE COMPLAINT

The City of St. Petersburg (the City) brings this action for breach of contract,

breach of fiduciary duty, negligence, and violation of two state statutes, in connection

---

[1]  Since the filing of this motion, Plaintiff voluntarily dismissed Defendant Wells
Fargo and Company, and this Court denied Wells Fargo's motion to dismiss as moot.  See
dockets 26 & 27.

with an investment in Lehman Brothers, Inc., which filed bankruptcy causing the value of

the investment to plummet.  The City sues Wachovia Bank, N.A. (Wachovia), Wells

Fargo & Company,[2] and Metropolitan West Securities, L.L.C. (Metropolitan West)[3] for

the poor investment.  Wachovia and Metropolitan West operate under the trade name of

Wachovia Global Securities Lending (WGSL).  WGSL serves as agent for the City, and

lends the City's securities to third-party borrowers.  The cash collateral received from any

borrower is then reinvested by the City's agent, in this case WGSL.  The relationship

between WGSL and the City is governed by the Securities Lending Agency Agreement

(the Agreement).  (Dkt. 19, Exh. A).  WGSL's role as agent is further governed by the

Securities Lending Investment Guidelines (the Guidelines), which is part of the

Agreement and provides that Plaintiff must approve the investments and maintains the

authority over the investments with respect to their purchase and sale.  (Dkt. 19, Exh. A at

Attachment B).

　　In this case, 15 million of the 200 million dollars[4] of the City's cash collateral was

invested by WGSL in Lehman Brothers Holdings corporate bonds (the Lehman bonds) on

March 23, 2007.  (Dkt. 1, paras. 1, 28 & 47).  The maturity date on the Lehman bonds

---

[2]   Wells Fargo was sued as a successor in interest to Wachovia, and as noted
earlier, has been dismissed from this action.

[3]   Metropolitan West is a wholly-owned subsidiary of Wachovia that was acquired
by Wachovia in 2004.

[4]   The City's portfolio of securities and other investments totals over 350 million
dollars.  (Dkt. 1, para. 12).

was March 23, 2009.  (Dkt. 1, para. 47).  In view of the downfall of the mortgage-backed securities investments as evidenced by the collapse of Bear Sterns & Co., the City decided to terminate its participation in WGSL's securities lending program sometime in 2008.  (Dkt. 1, paras. 52 & 53).  When Lehman Brothers' credit rating fell during June 2008, WGSL failed to inform the City of the risk.  (Dkt. 1, paras. 58-62).  The City contends it would have liquidated the Lehman bonds had it known of the downward spiraling credit ratings and increased risk of the investment.  (Dkt. 1, para. 65).  After the City requested WGSL to "unwind all securities lending contracts" on August 5, 2008, WGSL responded that the Lehman bonds would have to be liquidated before their maturity.  (Dkt. 1, paras. 66 & 67).  On September 15, 2008, Lehman Brothers filed for bankruptcy.  (Dkt. 1, para. 69).  When the third-party borrowers returned the loaned securities to the City, the City had to pay 15 million dollars to WGSL to repay those borrowers because the Lehman bonds were almost worthless.  (Dkt. 1, para. 72).

### STANDARD OF REVIEW

All allegations of the complaint are considered true and will be viewed in the light most favorable to the plaintiff.  See Brown v. Crawford County, 960 F.2d 1002, 1010 (11th Cir. 1992); Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals, L.P., 585 F.Supp.2d 1339, 1342 (M.D. Fla. 2008).  The complaint must allege "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  The factual allegations

must be "enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 545. "Rule 8 marks a notable and generous departure from the hyper-technical,

code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937,

1950, 173 L.Ed.2d 868 (2009).

## ANALYSIS

Although the Agreement embodies part of the relationship between the City and

WGSL, the City bases this action on more than merely breach of contract as shown in

counts II through V. WGSL seeks to dismiss all counts other than count I for breach of

contract on the grounds, first, that the economic loss rule bars recovery on any theory

other than breach of contract. Additional grounds for dismissal include the absence of

duties created or arising apart from those contractually required, the absence of a

fiduciary relationship, the inapplicability of Florida's Deceptive and Unfair Trade

Practices Act, section 501.201 of the Florida Statutes (the FDUPTA) to this securities

transaction and to Wachovia as a national bank, and the absence of a private right of

action under the Florida Securities and Investor Protection Act, sections 517.011-517.32,

Florida Statutes (the FSIPA) for transactions other than the purchase or sale of securities.

### *Economic Loss Rule, Breach of Fiduciary Duty, and Negligence (Counts II & III)*

"The economic loss rule is a judicially created doctrine that sets forth the

circumstances under which a tort action is prohibited if the only damages suffered are

economic losses." <u>Indemnity Ins. Co. of N. Am. v. American Aviation, Inc.</u>, 891 So.2d 532, 536 (Fla. 2004). The economic loss rule applies in the following two circumstances: (1) "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract;" and (2) "when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." <u>Id</u>. Clearly, the instant set of facts does not fit within the second category, but the first category of contractual privity could apply. The purpose behind preventing recovery in tort when two parties have entered into a contract lies in the allocation of economic risks. <u>Id</u>. at 536-37. Where the duties breached do not arise under the contract, however, an action for an independent tort may exist even though the parties are in contractual privity. <u>Id</u>. at 537.

A particular exception carved out from the economic loss rule exists for independent torts involving negligence in the rendering of professional services. <u>Id.</u> (citing <u>Moransais v. Heathman</u>, 744 So.2d 973, 983 (Fla. 1999)). In addition to this exception, others, including negligent misrepresentation and the freestanding statutory causes of action, still apply. <u>American Aviation</u>, 891 So.2d at 543 (citing <u>PK Ventures, Inc. v. Raymond James & Assocs.</u>, 690 So.2d 1296, 1297 (Fla. 1997) for negligent misrepresentation and <u>Comptech Int'l, Inc. v. Milam Commerce Park</u>, 753 So.2d 1219, 1221 (Fla. 1999) for statutory cause of action. The economic loss rule, therefore, does not automatically bar a claim for breach of fiduciary duty, but the rule applies when the

claim is based upon and inextricably intertwined with the claim for breach of contract.

See Action Nissan, Inc. v. Hyundai Motor Amer., 617 F.Supp.2d 1177 (M.D. Fla. 2008)

(citing Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc., 184 Fed.Appx. 894, 902

(11th Cir. 2006) (unpublished opinion).

      At least one district court has listed the case scenarios involving inextricable

intertwining between the contract and the fiduciary duty, and those cases finding a

fiduciary duty independent of the contractual obligations.  See Action Nissan, 617

F.Supp.2d at 1193-94.  Particularly, one Florida court has held that an independent

fiduciary duty arises from the purchase and sale of securities.  See First Equity Corp. of

Fla., Inc. v. Watkins, 1999 WL 542639, at *1 (Fla.Dist.Ct.App. 1999) (relying on

Moransais and recognizing that Interstate Sec. Corp. v. Hayes Corp., 920 F.2d 769, 776-

77 (11th Cir. 1991) was decided before Moransais and therefore Interstate "cannot be

regarded as good law on this point").

      This Court finds that the allegations for breach of contract are not inextricably

intertwined with the count for breach of fiduciary duty.  Moreover, WGSL acted as an

investor that purchased and sold investments for the City.  Such a position gives rise to

professional standards that exist apart from the contract that controls the relationship

between the investor and customer.  The economic loss rule does not bar the claim for

breach of fiduciary duty or negligence involving a special relationship between a

-6-

professional and a third party.[5]   Having reached this decision, this Court has not

overlooked <u>Charlotte-Mecklenburg Hosp. Auth, v. Wachovia Bank, N.A.</u>, 2009 WL

6328789 (N.C. Super. Ct. 2009), urged by Defendants.   That case was decided on North

Carolina law, not Florida law, and hence, this Court finds it unpersuasive.

<em><u>FDUTPA (Count IV)</u></em>

WGSL argues that the FDUTPA does not apply to securities transactions and does

not apply to Wachovia as a national bank.   While it may be argued that it is unclear

whether the particular investing services provided by WGSL are subject to the FDUTPA,[6]

it is clear that the FDUTPA does not apply to federally regulated banks such as

Wachovia.   See <u>DeLeon v. Bank of Am., N.A.</u>, 2009 WL 3822392 (M.D. Fla. 2009)

(citing <u>Caban v. J.P. Morgan Chase & Co.</u>, 606 F.Supp.2d 1361, 1371 (S.D. Fla. 2009),

and <u>International Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins. Cos.</u>, 2007 WL

---

[5]   See also <u>Florida Auto. Joint Underwriting Ass'n v. Milliman, Inc.</u>, 2007 WL 1341127, at *5 (N.D. Fla. 2007); <u>Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.</u>, 2000 WL 33992234, at *10 (M.D. Fla. 2000) (upholding breach of fiduciary duty prior to <u>American Aviation</u>); <u>Crowell v. Morgan Stanley Dean Witter Servs., Co.</u>, 87 F.Supp.2d 1287, 1292 (S.D. Fla. 2000) (upholding breach of fiduciary duty prior to <u>American Aviation</u>); <u>Hilliard v. Black</u>, 125 F.Supp.2d 1071, 1081 (N.D. Fla. 2000) (upholding breach of fiduciary duty prior to <u>American Aviation</u>).

[6]   See <u>Rogers v. CISCO Sys., Inc.</u>, 268 F.Supp.2d 1305, 1316-17 (N.D. Fla. 2003) (dismissing FDUTPA claim based on securities transactions on basis that FDUTPA does not regulate securities); <u>Crowell v. Morgan, Stanley, Dean Witter Servs., Co.</u>, 87 F.Supp.2d 1287, 1295 (S.D. Fla. 2000) (ruling that in absence of Florida law, majority of cases hold that deceptive and unfair trade practices acts are not held to be applicable to fraudulent securities transactions); <u>Rogers v. Nacchio</u>, No. 05-60667, slip op. at * 28-29 (S.D. Fla. Jun. 5, 2006) (following <u>Cisco</u> and <u>Crowell</u> and holding that FDUTPA does not apply to securities claims).

220172, at *7 (M.D. Fla. 2007)).  As discussed in these cases, section 501.212(4)© of the

Florida Statutes specifically exempts from FDUTPA all banks regulated by the federal

government.  Having determined that Wachovia is exempted from the application of the

FDUTPA, this Court need not determine whether the precise investments in this case are

subject to the FDUPTA.  Count IV is dismissed with prejudice.

### *FSIPA (Count V)*

There are no allegations of purchase or sale involving the Lehman bonds at issue in

this case; the only allegations involve WGSL's inducement of the City to hold or retain the

Lehman bonds at the time when WGSL should have been directing the City to sell them.[7]

The City alleges that WGSL induced it to not act, or rather to "hold" or retain the Lehman

bonds, by failing to reveal the impending downfall of Lehman at a time when WGSL was

required to disclose such information.  Because this case does not involve the purchase or

sale of securities, but rather the "holding" of securities, it cannot be brought as a federal

private right of action under § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. §

78j(b) or Rule 10b-5 based on the standing requirement.  Merrill Lynch, Pierce, Fenner &

Smith, Inc. v. Dabit,  547 U.S. 71, 77-80, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006)

(explaining the standing limitation of purchaser or seller for private federal securities

---

[7]    Count V of the Complaint alleges that WGSL "[i]n connection with the
rendering of such investment advice" . . . "failed to inform the City that WGSL was
basing its continuing recommendation to hold the Lehman bond investment on WGSL's
hope for a government bailout of Lehman."  (Dkt. 1, paras. 93 & 94©).

actions as espoused in <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 95 S.Ct.

1917, 44 L.Ed.2d 539 (1975)).   A "holder" action is distinguishable from a typical §10b

or Rule 10b-5 action in the sole respect that the holders of the securities, rather than the

purchasers or sellers, bring the action.  <u>Dabit</u>, 547 U.S. at 76, 88-89, 126 S.Ct. at 1515.[8]

These "holder" actions can then be brought only in state court provided the state has a

cause of action under its particular statutory law.  <u>Dabit</u>, 547 U.S. at 86 (stating that

"[f]acts supporting an action by purchasers under Rule 10b-5 (which must proceed in

federal court if at all) typically support an action by holders as well, at least in those States

that recognize holder claims.").

  Historically, since the Private Litigation Securities Reform Act of 1995, 15 U.S.C.

§§ 77z-1 and 78u-4 (PLSRA), was enacted to curb the misuse of class actions in federal

securities fraud cases by imposing more stringent requirements on plaintiffs, more

securities fraud cases appeared in state court to overcome the hurdles of the PLSRA.

<u>Dabit</u>, 547 U.S. at 81-82.  Congress acted again in 1998 by passing the Securities

Litigation Uniform Standards Act, 15 U.S.C. §§78bb(f), 77p(b) (SLUSA), to rectify the

rise in state court class action securities fraud cases, which were perceived as diversionary

maneuvers to avoid the PLSRA.  <u>Id.</u> at 82; <u>Instituto de Prevision Militar v. Merrill Lynch,</u>

<u>Pierce, Fenner & Smith, Inc.</u>, 546 F.3d 1340, 1344-45 (11th Cir. 2008) (noting that SLUSA

---

  [8]   The Supreme Court in <u>Dabit</u> did not create a private right of action under 10(b)
of the 1934 Act to "holder" plaintiffs.  <u>See</u> <u>Amorosa v. Ernst & Young LLP</u>, 682
F.Supp.2d 351 (S.D. N.Y. 2010).

was passed to prevent state private securities class actions alleging fraud from frustrating the purpose of the PLSRA).  In the context of interpreting SLUSA, <u>Dabit</u> notes that rather than technically pre-empting any state cause of action, it "simply denies plaintiffs the right to use the class-action device to vindicate certain claims."  <u>Dabit</u>, 547 U.S. at 87.  SLUSA, therefore, "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist."  <u>Dabit</u>, 547 U.S. at 87.

Two federal district courts have noted that while Florida law is unclear whether a plaintiff can sustain a state common law "holding" claim, which is an action for fraudulent misrepresentation or omission in inducing a plaintiff not to act or "hold" the securities, neither federal nor Florida securities laws allow an action for the improper "holding" of securities.  <u>See</u> <u>Pafumi v. Davidson</u>, 2007 WL 1729969, at *3 n. 4 (S.D. Fla. 2007) (citing <u>Rogers v. Cisco Sys., Inc.</u>, 268 F.Supp.2d 1305, 1311-13 & n. 13 (N.D. Fla. 2003),[9] <u>Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 292 F.3d 1334, 1343 (11th Cir. 2002), and <u>Ward v. Atlantic Sec. Bank</u>, 777 So.2d 1144, 1146-47 (Fla.Dist.Ct.App. 2001)).  <u>Riley</u>, however, has since been abrogated by <u>Instituto de Prevision Militar v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 546 F.3d 1340, 1348 (11th Cir. 2008), on the issue of the scope of SLUSA.  The Eleventh Circuit noted in <u>Instituto de Prevision Militar</u> that the

---

[9]  "The court in <u>Rogers</u> evaluated whether such claims may be available in common law fraudulent misrepresentation claims."  <u>Pafumi</u>, 1007 WL 1729969, at *3 n. 4.

Supreme Court's decision in <u>Dabit</u> expanded the scope of claims exempted by SLUSA. Although SLUSA applies to only class actions, which this case is not, it exempts from state court claims that include not only those involving the purchase or sale of securities covered under SLUSA, but also those by "holders of securities." <u>Instituo de Prevision Militar</u>, 546 F.3d at 1348. In this individual action, the City is a "holder" of the Lehman bonds, about which WGSL allegedly failed to render advice.

Apart from the issue of the expansive scope of SLUSA, the Florida appellate court case of <u>Ward</u> gives some pause. In <u>Ward</u>, the plaintiff brought a potential "holding" claim premised on section 517.301 of the Florida Statutes, and the court reversed summary judgment in favor of the bank so that the claim could proceed to trial. The court did not definitely decide that a "holding" claim existed, rather, the court reversed the summary judgment on the following basis: "[u]nlike its federal counterpart, a securities fraud claim under section 517.301 may also be brought for fraud 'in connection with the rendering of any investment advice.'" <u>Ward</u>, 777 So.2d at 1147. This passing observation has nothing to do with whether a private right of action exist for a "holder" under Florida securities law. The Florida Supreme Court has held that section 517.211 requires the buyer-seller privity with no need of finding any implied right of action for buyers and sellers in section 517.301, as federal law must do under 10b-5. See <u>E.F. Hutton & Co. v. Rousseff</u>, 537 So.2d 978, 981 (Fla. 1989).[10] As urged by WGSL, the <u>Ward</u> opinion cannot be reconciled

---

[10]   See also <u>Compania de Elaborados de Café v. Cardinal Cap. Mgt., Inc.</u>, 401 F.Supp.2d 1270, 1280 (S.D. Fla. 2003) (citing <u>Rousseff</u> for the premise that plaintiff must

with the language of section 517.211 requiring a purchaser or seller to bring a cause of

action under section 517.301.  Hence, this Court will follow <u>Rousseff</u> and the plain

language of Florida securities law that a "holder" may not bring a statutory securities fraud

action.  Any attempt to further replead a cause of action under Florida's statutory securities

law would be futile based on the City's inability to allege that it was induced to purchase

or sell the Lehman bonds.  <u>See, e.g.</u>, <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir.

2001) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222

(1962)).

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to

Dismiss Counts II through V of the Complaint is **GRANTED** with prejudice as to Counts

IV and V and **DENIED** as to Counts II and III.  Defendants shall file an answer to Counts

I, II, and III within 10 days of the date of this order.

**DONE AND ORDERED** at Tampa, Florida, on July 27, 2010.


_____s/*Richard A. Lazzara*_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record

_____

allege purchase or sale of securities to maintain action under section 517.301).